```
 1
 2
 3
 4
 5
 6
 7                   IN THE UNITED STATES DISTRICT COURT
 8
                    FOR THE EASTERN DISTRICT OF CALIFORNIA
 9
10  UNITED STATES,                    )
                                      )      2:05-cr-0190-GEB
11                  Plaintiff,        )
                                      )      ORDER
12        v.                          )
                                      )
13  MATTHEW McCALL,                   )
                                      )
14                  Defendant.        )
                                      )
15
```

        Defendant Matthew McCall ("McCall") moves to suppress a loaded pistol that California State University ("CSU") Officer Solomon found during a frisk of McCall following a vehicle stop for an investigation of suspected attempted burglary and possession of marijuana.  McCall states in his supplemental brief filed March 31, 2006, that he "does not question Officer Solomon's authority to stop the car" in which McCall was a front seat passenger, since Officer Solomon smelled the odor of marijuana emitting from the vehicle.  (Def.'s Supp. Brief at 1.)  However, McCall does challenge Officer Solomon's authority "to frisk [him]" following the stop.[1]  (Id.)

---

[1] McCall's counsel informed chambers about the pendency of this motion and the failure of the government to submit a supplemental brief.  The government indicated at the evidentiary hearing held February 17,
(continued...)

1

Background

Officer Solomon was told by CSU Community Services Officer Woods that at approximately 2:00 a.m. on April 7, 2005, Woods had observed a vehicle occupied by at least two black males driving slowly in a dormitory parking area where a number of car burglaries had occurred, and that "it may be casing for car burglaries." (RT at 19.) Officer Solomon responded in a marked car and saw a vehicle occupied by four black adults exiting the dorm parking area. (RT at 25.) Officer Solomon positioned his marked car behind that vehicle. In that position, Officer Solomon could smell a strong odor of marijuana emitting from the vehicle. Subsequently, Officer Solomon made a vehicle stop on an esplanade, "which is on the exit or entrance to the University" and had "zero lighting." (RT at 6, 8.)

The vehicle did not "immediately pull over" after Officer Solomon activated his vehicle lights. (RT at 7.) Further, as Officer Solomon was following the vehicle he saw McCall do "what [he] thought to be a movement" in the vehicle; it "[l]ooked like [McCall] was either turning around in his seat or placing something underneath the seat . . . ." (Id.) Officer Solomon explained this movement concerned him because "they're trying to either ditch a weapon or maneuver into a position where they can use it against officers." (Id.)

After the vehicle stopped, Officer Solomon approached the passenger side so that his back would not be near traffic. (RT at 9.)

---

[1](...continued)
2006, that no further briefing was necessary because the Court had all the information it needed to resolve the motion.

2

He continued to smell marijuana wafting out of the vehicle as he approached it. (Id.)

From the passenger side of the vehicle where McCall was seated, Officer Solomon spoke with the driver regarding whether the driver had a driver's license. The driver responded he did not have a driver's license. (RT at 9-10.) Officer Solomon "could smell marijuana . . . coming from the vehicle" the entire time he spoke to the driver. (RT at 10.) Officer Solomon asked the driver to step out of the vehicle and move to the back of the officer's vehicle. (Id.) When Officer Solomon met the driver at that location, the driver acknowledged he and the occupants of the vehicle had been smoking marijuana. (Id.) The driver also told Officer Solomon "there was a small amount of marijuana in the vehicle." (Id.) The driver was placed in the back of Officer Solomon's patrol car after a pat-down search, since he was detained for "investigation for narcotics and for furtherance of [a] burglary investigation."[2] (Id.)

Officer Solomon testified "obviously, [he was] not going to take [the driver's] word for [what was in the vehicle,]" and he proceeded with his investigation. (Id.) Officer Solomon again approached the passenger side of the vehicle and asked McCall to step out of the vehicle. He thinks he asked McCall "the routine questions; do you have anything on you, any weapons, . . . narcotics." (RT at 11.) Officer Solomon then performed "a cursory pat-down search [of

---

[2] The issue of whether sufficient reason existed for a burglary investigation is not reached, since the circumstances involved with the narcotics investigation (lateness of hour, smell of marijuana, admission that marijuana had been smoked in the car and could be found in the car, and that the driver was driving without a license) provided sufficient justification for that investigation. See United States v. Little, 945 F. Supp. 79, 83 (S.D.N.Y. 1996) (where similar circumstances were found sufficient to justify a Terry investigation).

McCall], for [his] safety," during which he found a loaded pistol in McCall's back pocket.   (RT at 11, 13.)

## Analysis

"The standard for justifying a frisk is whether a reasonably prudent person in the circumstances would be warranted in the belief that his . . . safety or that of others was in danger." United States v. Thomas, 863 F.2d 622, 628 (9th Cir. 1988).  Since Officer Solomon observed McCall make a furtive type of movement indicating McCall could have "either ditch[ed] a weapon" or maneuvered a weapon "into position where [it could be] use[d] against officers," Officer Solomon's protective frisk of McCall was justified.  (RT at 7.)

A furtive movement in face of being followed by a patrol car is a pertinent factor in determining the reasonableness of a protective frisk.  Thomas, 863 F.2d at 629 (identifying "abrupt movements [and] . . . suspicious, furtive behavior" as factors in determining whether a frisk is justified).  Officer Solomon knew narcotic criminal activity was occurring in the vehicle in which McCall was a passenger, and that the driver implicated McCall in that activity, and that to conduct that investigation inside the vehicle safely, McCall would have to be removed from the vehicle.  Since McCall was seen engaged in a furtive movement consistent with concealing a weapon on his person, that observation "justifiably prompted [Officer Solomon] to fear for his safety" and to frisk McCall to see if he was armed.  Id.; see also Little, 945 F. Supp. at 83 (where the court observed that vehicle occupants who "appear[ed] nervous[,] . . . together with . . . lateness of hour, smell of marijuana, admission that a 'blunt' had been smoked in the car, [and

4

the driver was] driving without a license . . . [was] sufficient to justify a frisk based solely on reasonable suspicion.").

An issue not addressed by the government and not argued by McCall is whether the frisk could be justified under Terry if McCall had been handcuffed before he was frisked. Although the government's examination of Officer Solomon at the suppression hearing established that the frisk occurred before McCall was handcuffed, defense counsel's examination of Officer Solomon elicits contradictory testimony which indicates the frisk could have occurred after McCall was handcuffed. This timing issue is immaterial here, because even if McCall had been frisked after he had already been handcuffed, the frisk was not unreasonable under the circumstances. As the Fifth Circuit stated in United States v. Sanders, 994 F.2d 200, 209 (5th Cir. 1993): "Handcuffs are a temporary restraining device; they limit but do not eliminate a person's ability to perform various acts. . . . Handcuffs do limit a person's ability to use his hands and arms, but the degree of the effectiveness of handcuffs in this role depends on a variety of factors, including the handcuffed person's size, strength, bone and joint structure, flexibility, and tolerance of pain. Albeit difficult, it is by no means impossible for a handcuffed person to obtain and use a weapon concealed on his person . . . . Finally, like any mechanical device, handcuffs can and do fail on occasion."

Accordingly, under the totality of the circumstances, Officer Solomon had the reasonable and articulable suspicion necessary

/////
/////
/////
/////

5

1  to conduct the protective frisk of McCall.  Therefore, the motion to
2  suppress the loaded pistol is denied.
3  Dated:  April 27, 2006

                                  /s/ Garland E. Burrell, Jr.
                                  GARLAND E. BURRELL, JR.
                                  United States District Judge